199 N.J. Super. 132 (1985)
488 A.2d 1038
DANA GRIESENBECK, AN INFANT BY HER GUARDIAN AD LITEM, BERNARD A. KUTTNER, ESQ., AND THE ESTATE OF JAMES R. GRIESENBECK, DECEASED BY HIS GUARDIAN AD LITEM, BERNARD A. KUTTNER, ESQ., PLAINTIFFS-APPELLANTS,
v.
JOHN Y.G. WALKER, JR., MARYL R. WALKER, AND THE ESTATES OF CARYL GRIESENBECK AND JAMES L. GRIESENBECK, BY THEIR EXECUTOR RICHARD ROSENBLATT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 1984.
Decided February 27, 1985.
*133 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
Kuttner, Toner & DiBenedetto, attorneys for appellants (Bernard A. Kuttner, on the brief).
*134 Shanley & Fisher, attorneys for respondents (Richard E. Brennan, of counsel and on the brief; Susan M. Sharko, on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
This case involves the asserted liability of a social host to third parties for the negligent acts of an intoxicated guest which are unrelated to the operation of an automobile. We decide that such liability may not be imposed in the circumstances of this case and accordingly affirm the trial court's summary judgment dismissing the complaint, although for reasons different from those relied upon by the judge. See Isko v. Livingston Tp. Planning Bd., 51 N.J. 162, 175 (1968).
On the evening of February 26, 1981 defendants, John Y.G. Walker, Jr. and Maryl R. Walker, returned to their home after a three-week Caribbean vacation. Their daughter, Caryl Griesenbeck, the mother of Dana, aged 5, and James, aged 18 months, came to their home at approximately 9:30 p.m. to welcome them back. She was joined there by her sister, Maryl Walker Lewis. According to Mr. Walker, after about 20 minutes of conversation he made everyone a drink, including a bourbon and water for his daughter, Caryl, and after a second drink Caryl left in her car sometime between 11:30 and midnight to drive to her residence in Montclair, a distance of about three miles. At 1:20 a.m. the Montclair Fire Department received a report of a fire which ultimately gutted the Griesenbeck residence and resulted in the death of Caryl Griesenbeck, her husband and the infant, James, and serious injuries to the daughter, Dana. Mrs. Griesenbeck and her daughter were found by firemen on the roof of the sun porch and James was found in the bushes below the sun porch roof. Mr. Griesenbeck's body was in one of the bedrooms. They were all dressed in sleeping clothes. An autopsy determined Mr. Griesenbeck died from smoke inhalation and that there were no traces of *135 alcohol in his body. The cause of Caryl's death was determined as smoke inhalation and alcohol intoxication. A toxicology report indicated a blood alcohol content of .172%, a quantity suggesting acute alcohol intoxication. Plaintiffs' expert toxicologist opined that Caryl Griesenbeck must have consumed at least nine alcoholic drinks prior to her death in order to have attained the blood alcohol level stated in the report.
The report of the Fire Department concluded that the fire was caused by a cigarette left smoldering in a sofa in a downstairs room.
Plaintiffs contend that the Walkers served alcoholic drinks to Caryl while she was obviously intoxicated and permitted her to leave their home in that condition. Further, because she was impaired by alcohol, that Caryl either caused the fire by leaving a cigarette burning in the sofa or was so intoxicated that she was unable to take necessary proper precautions to alert her family to the danger or to safely evacuate them from the home.
In ruling on the Walkers' motion for summary judgment, the trial court concluded that plaintiffs' claims did not constitute a cause of action in view of this court's rejection in Kelly v. Gwinnell, 190 N.J. Super. 320 (App.Div. 1983), of a social host's liability for injuries to third parties caused by an intoxicated adult guest's drunken driving. The subsequent reversal of that decision by the Supreme Court, Kelly v. Gwinnell, 96 N.J. 538 (1984), effectively removed the basis of the trial judge's ruling on the motion. However, as the Supreme Court limited its holding in Kelly to liability for injuries resulting from the guest's drunken driving, Id. at 559, that decision does not require the conclusion that a cause of action exists in the factual setting of the present case. We therefore proceed to a consideration of the issues in terms of the common law principles of negligence and proximate causation. In doing so, we accept as true the allegations of plaintiffs as to the intoxicated condition of Caryl Griesenbeck, the serving of alcoholic drinks to her by defendants, Walker, when she was visibly intoxicated, *136 and that the fatal fire, as well as her inability to rescue the children, were in some manner related to her intoxicated condition. Thus, there are no disputed issues which would preclude a summary disposition of plaintiffs' claims. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954). This procedure permits an efficient resolution of this litigation as it presents issues which are determinable as a matter of law. Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).
In concluding that plaintiffs' complaint was properly dismissed, we have determined that plaintiffs do not have a cause of action in negligence against the Walkers for the deaths and injuries resulting from the unfortunate and tragic fire which destroyed the Griesenbeck residence following Mrs. Griesenbeck's return from the Walker home. Essential elements of the asserted cause of action are lacking. Actionable negligence requires the existence of a duty to act or not to act arising by reason of the actor's creation of an unreasonable risk of foreseeable harm or one judicially imposed because of policy considerations. Kelly v. Gwinnell, 96 N.J. 538.
As expressed in Caputzal v. The Lindsay Co., 48 N.J. 69, 74-75 (1966):
... The two applicable concepts in the case of nonintentional conduct or failure to act are the very basic ones of duty, and the breach thereof, and proximate, or legal, cause of the injury complained of.
The first is modernly summarized by Dean Prosser as:
"1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on his part to conform to the standard required. These two elements go to make up what the courts have usually called negligence; but the term quite frequently is applied to the second alone. Thus it may be said that the defendant was negligent, but is not liable because he was under no duty to the plaintiff not to be." Prosser, Torts, § 30, p. 146 (3d ed. 1964) (emphasis supplied).
* * * * * * * *
This hypothetical standard conventionally brings into play the matter of "foreseeability" in determining what the reasonable man should recognize as involving an unreasonable risk of harm. Foreseeability is not solely a mere matter of *137 logic, since anything is foreseeable, but frequently involves questions of policy as well. When it does, the matter is one for determination by the court and not by the fact-finder.... [citations omitted].
The significance of foreseeability as a duty determinant was pointed out in Hill v. Yaskin, 75 N.J. 139, 144 (1977), in referring to the following portion of the text of 57 Am.Jur.2d, Negligence, § 58 (1970), as a good statement of the concept:
... The broad test of negligence is what a reasonably prudent person would foresee and would do in the light of this foresight under the circumstances. Negligence is clearly relative in reference to the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care....
And as explained in Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583 (1962):
The question is not simply whether a[n] ... event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution.
Similar standards were expressed in the earlier case of Wytupeck v. Camden, 25 N.J. 450, 461-462 (1957):
"Duty" is not an abstract conception; and the standard of conduct is not an absolute. Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, Lokar v. Church of the Sacred Heart, 24 N.J. 549 (1957). In the field of negligence, duty signifies conformance "to the legal standard of reasonable conduct in the light of the apparent risk"; the essential question is whether "the plaintiff's interests are entitled to legal protection against the defendant's conduct." Prosser on Torts (2d ed.), section 36. Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct.
It is now established that a social host owes a duty to the public not to serve liquor to a minor or adult guest knowing that the guest is intoxicated and will thereafter be operating a motor vehicle, as such conduct of the host creates a foreseeable and unreasonable risk of harm to others using the highways. Kelly v. Gwinnell, 96 N.J. 538; Linn v. Rand, 140 N.J. Super. *138 212 (App.Div. 1976). See also Davis v. Sam Goody, Inc., 195 N.J. Super. 423 (App.Div. 1984); Figuly v. Knoll, 185 N.J. Super. 477 (Law Div. 1982). This rule does not require a reversal of the dismissal in this case as Kelly expressly limited the liability of a host to "injuries resulting from the guest's drunken driving." 96 N.J. at 559. In imposing such a duty upon a social host, the court recognized the reasonable foreseeability of the harm to others likely to result from the operation of a car by the intoxicated guest and the fairness of holding the host responsible for injuries resulting from the presence on the highway of a drunken driver whose intoxicated condition was due in large measure to the conduct of the host. This result was also deemed to be consistent with desired social goals. As the present case does not involve the operation of a motor vehicle by the intoxicated guest, these applications of foreseeability and fairness are not pertinent to our consideration of the existence of a duty owed by the Walkers to the injured plaintiffs.
The key to duty in the fact pattern under review is the foreseeability to a reasonable person of an enhanced hazard to the Griesenbeck children, who presumably were then home and in bed, of their mother returning from her parent's home in an intoxicated condition, and by reason thereof causing the house to become inflamed, and then being unable to rescue the children from the burning building. Such a sequence of events leading to the ensuing deaths and injury can hardly be equated with what a reasonably prudent person would anticipate as a probable result of the assumed activity of the Walkers. As such foreseeability defines the duty to be obeyed, in the absence thereof there is no just basis for imposing upon the Walkers a duty toward the Griesenbeck children to have refrained from serving liquor to their mother. The application of the standards of "right reason and essential justice" as expressed in Wytupeck, compels the conclusion that the interests of the children, in the circumstances of this case, were not entitled to legal protection against the assumed acts of the *139 Walkers. Additionally, from the point of view of fairness, it would be fanciful to suggest that, by the serving of liquor to an intoxicated guest, a host should be held to recognize that he would be creating an unreasonable risk of injury to members of the guest's family who were then at their home several miles away. This would place an unreasonable burden upon a host in subjecting him to liability for unforeseeable and indeterminable risks. The duty of reasonable care and prudence is founded on the probabilities of a given situation, not on mere possibility. McKinley v. Slenderella Systems of Camden, N.J., Inc., 63 N.J. Super. 571, 582 (App.Div. 1960).
Further, there is lacking the public interest which induced the Supreme Court in Kelly to impose a duty upon a social host toward those injured as the result of the intoxicated guest's operation of a motor vehicle. While it might be said that drunkenness, in itself, is a societal problem, we do not consider it necessary, as being supportive of a social goal, to extend a host's liability for the serving of liquor to an intoxicated guest to harmful acts of the guest not related to the operation of a vehicle and otherwise unforeseeable. As the question of the existence of a duty is a matter of law, it is appropriate that we determine its absence in the instant case. Essex v. New Jersey Bell Tel. Co., 166 N.J. Super. 124, 127 (App.Div. 1979); see also Malewich v. Zacharias, 196 N.J. Super. 372 (App.Div. 1984).
The summary dismissal of plaintiffs' complaint may also be predicated upon the lack of proximate cause. While proximate cause is generally defined as the natural and probable effect of the wrongdoing, fairness and policy also enter into an assessment of the causal relationship between the conduct and the accidental harm. Brown v. United States Stove Co., 98 N.J. 155, 173 (1984). As Justice Hall observed in Caputzal v. The Lindsay Co., 48 N.J. at 77-78:
... Utilization of that term (proximate cause) to draw judicial lines beyond which liability will not be extended is fundamentally as an instrument of fairness and policy, although the conclusion is frequently expressed in the confusing language of causation, "foreseeability" and "natural probable consequences." *140 Many years ago a case in this State hit it on the head when it was said that the determination of proximate cause by a court is to be based "`upon mixed considerations of logic, common sense, justice, policy and precedent.'" Powers v. Standard Oil Co., 98 N.J.L. 730, 734 (Sup.Ct. 1923), affirmed o.b. 98 N.J.L. 893 (E. & A. 1923). Dean Prosser puts it well in this fashion:
`As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.
This limitation is sometimes, although rather infrequently, one of the fact of causation. More often it is purely one of policy, of our more or less inadequately expressed ideas of what justice demands, or of administrative possibility and convenience, none of which have any connection with questions of causation at all.' (Prosser, op. cit. supra, pp. 240-41).
Thus the current Restatement contains this qualification, very appropriate in this case:
`* * * The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.' Restatement, Torts 2d, § 435(2).
The issue of responsibility for the highly extraordinary consequence is also a matter of law for the court. Caputzal v. The Lindsay Co., 48 N.J. at 78; see also Glaser v. Hackensack Water Co., 49 N.J. Super. 591, 597 (App.Div. 1958). Although Mrs. Griesenbeck's intoxicated condition may have contributed in some manner to the fire and the subsequent unsuccessful attempt to save herself and the children, the Walkers' conduct in serving liquor to their daughter, prior to her driving several miles to her home and an hour or more before the fire was reported, is not so closely and significantly connected with the consequences as to justify the imposition of liability upon the Walkers. If Mrs. Griesenbeck's intoxication was connected with the cause of the fire, it was such a highly extraordinary consequence that justice, fairness and common sense compel the conclusion that the Walkers' assumed conduct may not be considered the proximate cause of the death and injury which befell the Griesenbeck children. The asserted liability of the Walkers is beyond the boundary of that which might justly be deemed a foreseeably probable consequence of their conduct.
*141 We have not been furnished with, nor has our own research disclosed, any authority for imposing upon social hosts the kind of liability asserted by plaintiffs. Our courts have not yet extended the liability of servers of alcoholic beverages beyond injuries related to drunken driving, Kelly v. Gwinnell, 96 N.J. 538; Linn v. Rand, 140 N.J. Super. 212; Davis v. Sam Goody, Inc., 195 N.J. Super. 423; Figuly v. Knoll, 185 N.J. Super. 477, or to barroom accidents and barroom brawls. Soronen v. Olde Milford Inn, Inc., 46 N.J. 582 (1966); Mt. Hope Inn v. Travelers Indemnity Co., 157 N.J. Super. 431 (Law Div. 1978). However, in other jurisdictions, liability of the tavern owner or a host has been rejected in cases where the intoxicated person causes injury or is injured in a manner other than in a barroom brawl or involving the operation of an automobile. See Linson v. Crow, 36 Ill. App.3d 574, 344 N.E.2d 565 (1976) (no liability for death of intoxicated patron who was unable to defend himself in assault outside tavern because of his degree of intoxication); Watson v. Ristow, 42 Mich. App. 318, 201 N.W.2d 289 (1972) (no liability for sale of alcohol to drunk who becomes involved in an altercation with a patron's husband, who is struck by a beer bottle thrown by the drunk's sister and a glass splinter enters the innocent plaintiff's eye); Shelby v. Keck, 85 Wash.2d 911, 541 P.2d 365 (1975) (no liability for service to intoxicated customer who misloads gun under saloon table and kills patron); Padulo v. Schneider, 346 Ill. App. 454, 105 N.E.2d 115 (1952) (no liability for assault committed upon a female patron by an intoxicated patron after both had left the tavern). The determinations in these cases were based upon either an absence of a duty owing to the injured person by the provider of the liquor or a lack of a causal connection between the furnishing of the intoxicating beverages and the claimed injury.
As the basic elements of an actionable claim for negligent conduct  duty, the breach thereof and proximate cause of the harm complained of  were lacking in the present case, the complaint was properly dismissed as to John Y.G. Walker, Jr. *142 and Maryl R. Walker for failure to state a cause of action as to these defendants.
Affirmed.