# William Langle, Jr. v. Walter Kurkul, Sr., William Kurkul, Walter Kurkul, Jr. and Gary Kurkul

[510 A.2d 1301]

No. 82-254

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed January 24, 1986

Motion for Reargument Denied February 25, 1986

Motion for Reconsideration Denied March 21, 1986

514

*Susan F. Eaton* of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiff-Appellant.

*Bartley J. Costello* and *S. Stacy Chapman, III*, of *Webber & Costello*, Rutland, and *Robert S. Burke* and *Edwin W. Free, Jr.*, of *Richard E. Davis Associates*, Barre, for Defendant-Appellee.

**Billings, C.J.** In July of 1976, the plaintiff attended a party at the home of the defendant, Walter Kurkul, Sr. At the party, the plaintiff was served and consumed a quantity of intoxicating liquor and became inebriated. The plaintiff then went to defendant Gary Kurkul's residence to swim in his pool. The plaintiff was preparing to dive from the railing of the pool when the railing

broke and he fell headfirst into the pool. As a result of the accident, the plaintiff broke his neck and became a quadriplegic.

The plaintiff's complaint alleged, inter alia, that the defendant negligently and unlawfully offered and served him intoxicating liquor; the plaintiff thereby became intoxicated, and as a direct and proximate result of this intoxication, he was injured in the swimming pool accident. The plaintiff's claims against all the defendants, except Walter Kurkul, Sr., were settled out of court. The defendant moved, under V.R.C.P. 12(b)(6), to dismiss the plaintiff's complaint, and the court granted the motion on the ground that the plaintiff had failed to state a cause of action under either a common law negligence doctrine or 7 V.S.A. § 501, Vermont's civil damage act, popularly known as Vermont's Dram Shop Act.

The plaintiff appeals the dismissal of his complaint for failure to state a cause of action. We affirm.

## I.

The plaintiff contends that he has a cause of action under Vermont's Dram Shop Act. The Act provides, in pertinent part, that:

> A husband, wife, child, guardian, employer or other person who is injured in person, property or means of support by an intoxicated person, or in consequence of the intoxication of any person, shall have a right of action in his or her own name, jointly or severally, against a person or persons, who, by selling or furnishing intoxicating liquor unlawfully, have caused in whole or in part such intoxication. . . .

7 V.S.A. § 501.

We have held in numerous instances that where the meaning of a statute is clear and unambiguous, we must construe and enforce it according to its express meaning. See, e.g., *Littlefield* v. *Department of Employment & Training*, 145 Vt. 247, 253, 487 A.2d 507, 510 (1984). We also approve of the rule of statutory construction that when an enumerated list in a statute (such as "husband, wife, child, guardian, employer") is followed by a general term, the general term must be construed to include only those terms which are similar in nature to the enumerated terms. Since those persons listed in the Dram Shop Act stand in some special relation to the intoxicated person, the use of the term

"other person" in the Act must mean someone who is similarly situated. We cannot find that the intoxicated person occupies that same special relationship. If the legislature had intended the Act to apply to the intoxicated person, it could easily have listed the inebriate along with the other persons designated in § 501. See *Grenafege* v. *Department of Employment Security*, 134 Vt. 288, 292, 357 A.2d 118, 121 (1976) ("If the legislative intent were as [appellant] contends, it would then be clearly expressed.").

We hold, therefore, that the Dram Shop Act gives a cause of action only to third persons who are injured by an intoxicated person. The Dram Shop Act provides no remedy to the imbiber, whether he be a customer of a commercial vendor or a guest of a social host, to recover for subsequent injuries to himself as the result of his consumption of too much alcohol. Consequently, we agree with the trial court that the plaintiff does not have a cause of action under the Dram Shop Act.

## II.

We also reject the holding of some courts in other jurisdictions that their respective states' dram shop acts preempt a remedy under the common law in situations such as the one presented in this case. See, e.g., *Cunningham* v. *Brown*, 22 Ill. 2d 23, 30, 174 N.E.2d 153, 157 (1961); *Snyder* v. *Davenport*, 323 N.W.2d 225, 228 (Iowa 1982); *Browder* v. *International Fidelity Insurance Co.*, 413 Mich. 603, 615-16, 321 N.W.2d 668, 675 (1982) (dram shop act held to be the exclusive remedy). Vermont's Dram Shop Act provides a cause of action in strict liability to injured third persons; it does not address a cause of action in negligence. Therefore, it cannot be said that the Act forecloses a cause of action in negligence, since all common law that is "not repugnant to the constitution or laws shall be laws" in Vermont. 1 V.S.A. § 271. The common law is changed by statute only if the statute overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter. See *E.B. & A.C. Whiting Co.* v. *City of Burlington*, 106 Vt. 446, 464, 175 A. 35, 44 (1934) ("rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language"). In this case, the Dram Shop Act does not contain any unambiguous language foreclosing the possibility of a

cause of action in negligence. Nor is the statute, which merely gives a cause of action in strict liability, inconsistent with a possible cause of action in negligence. Finally, the statute does not purport to cover all the possible rights and remedies flowing from such injuries.

We also reject the argument that the legislature's consideration of the problem of intoxication-related injuries (as evidenced by the Dram Shop Act), coupled with its failure to enact a statute covering a situation like the one in the present case, indicates that the legislature intended to immunize the social host from liability for negligently serving liquor to his or her guests. See *Harrington* v. *Gaye*, 124 Vt. 164, 166, 200 A.2d 262, 263 (1964) (court cannot ascribe legislative intent to a mere act of omission); *Saund* v. *Saund*, 100 Vt. 387, 393, 138 A. 867, 870 (1927) (statute cannot be enlarged by implication unless necessary to make it effective to accomplish its object).

## III.

We next address the plaintiff's argument that he has a cause of action in common law negligence. The elements required for a cause of action in common law negligence are: (1) the defendant must owe a legal *duty* to conform to a certain standard of conduct so as to protect the plaintiff from an unreasonable risk of harm; (2) the defendant must have committed a *breach* of this duty by failing to conform to the standard of conduct required; (3) the defendant's conduct must be the *proximate cause* of the plaintiff's injury; and (4) the plaintiff must have suffered actual loss or *damage*. W. Prosser and W. Keeton, The Law of Torts § 30, at 164-65 (5th ed. 1984).

The first issue we must confront is whether we should recognize a duty on the part of a social host toward an intoxicated adult guest under common law negligence. Because of our disposition of this issue and our determination that there is no legal duty owed, it is unnecessary for us to reach the other elements required for a cause of action under common law negligence.

To undertake such an expansion of the common law as this case requires, in the absence of compelling public policy reasons, would be improper judicial legislation. Wherever courts of other states have recognized the duty of a social host not to furnish intoxicating beverages to a guest where injury to a third party

may be foreseeable, they have generally done so in one of two situations: (a) where the social host furnishes alcoholic beverages to one who is visibly intoxicated and it is foreseeable to the host that the guest will thereafter drive an automobile, or (b) where the social host furnishes alcoholic beverages to a minor.

Some courts have found a duty in cases involving negligence per se, where the defendant social host violated a particular safety statute. Some cases have involved statutes prohibiting the serving of alcohol to minors, see, e.g., *Congini* v. *Portersville Valve Co.*, 504 Pa. 157, 161-63, 470 A.2d 515, 517-18 (1983) (citing 18 Pa. Cons. Stat. §§ 6308, 306 (1983)); *Koback* v. *Crook*, 123 Wis. 2d 259, 266, 366 N.W.2d 857, 860 (1985) (citing Wis. Stat. §§ 66.054(20)(a), 176.30(2)(a) (1979-80)); while others involved statutes prohibiting a social host from serving alcohol to an obviously intoxicated guest. *Coulter* v. *Superior Court*, 21 Cal. 3d 144, 150-52, 577 P.2d 669, 672-73, 145 Cal. Rptr. 534, 537-38 (1978) (citing Cal. Business and Professions Code § 25602 (West 1964), *overruled by statute*, Cal. Civ. Code § 1714(b), (c) (West 1985); *Sutter* v. *Hutchings*, 254 Ga. 194, 197, 327 S.E.2d 716, 718-19 (1985) (citing Ga. Code Ann. §§ 3-3-22, 3-3-23(a)(1) (1982)); *Clark* v. *Mincks*, 364 N.W.2d 226, 231 (Iowa 1985) (citing Iowa Code Ann. § 123.49(1) (West Cum. Supp. 1983)).

■ Although Vermont's liquor control laws make it a misdemeanor punishable by fine or imprisonment for *any* person (whether a commercial vendor or a social host) to sell or furnish alcoholic beverages to a minor, 7 V.S.A. § 658, Vermont has no comparable statute making it a crime for any person (commercial vendor or social host) to sell or furnish alcoholic beverages to an adult who is visibly intoxicated. Therefore, there is no statutory basis in the present case for a finding of negligence per se.

The second ground for finding a duty on the part of a social host has been the recognition of a common law duty on the part of the social host to prevent an intoxicated guest from posing a foreseeable danger to a third party. To date, the recognition of such a duty has been limited to factual situations involving the operation of a motor vehicle on a public highway. See, e.g., *Coulter, supra*, 21 Cal. 3d at 152-54, 577 P.2d at 674-75, 145 Cal. Rptr. at 539-40; *Sutter, supra*, 254 Ga. at 197, 327 S.E.2d at 719; *Kelly* v. *Gwinnell*, 96 N.J. 538, 548, 476 A.2d 1219, 1230 (1984); *Wiener* v. *Gamma Phi Chapter of Alpha Tau Omega Fraternity*, 258 Or. 632, 643, 485 P.2d 18, 23 (1971). The outcome in the present case

turns on whether this Court should recognize a new duty, running from a social host to an inebriated adult guest, in a factual situation not involving drunk driving.

Whether there is a legal duty is primarily a question of law, dependent upon a variety of relevant factors and upon considerations of public policy. " '[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Dillon* v. *Legg*, 68 Cal. 2d 728, 734, 441 P.2d 912, 916, 69 Cal. Rptr. 72, 76 (1968) (quoting W. Prosser, Law of Torts 332-33 (3d ed. 1964)).

In considering the recognition of a new duty involving a social host and an inebriated adult guest, the California Supreme Court stated: "The existence of a duty is primarily a question of law, and dependent upon a variety of relevant factors, of which 'foreseeabilility of the risk is a primary consideration . . . .' " *Coulter, supra,* 21 Cal. 3d at 152, 577 P.2d at 674, 145 Cal. Rptr. at 539 (quoting *Weirum* v. *RKO General, Inc.,* 15 Cal. 3d 40, 46, 539 P.2d 36, 39, 123 Cal. Rptr. 468, 471 (1975)). That court then went on to state:

> We have previously identified certain factors other than foreseeability in determining the ultimate existence of a "duty" to third persons. These factors include: ". . . the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

*Id.* at 153, 577 P.2d at 674, 145 Cal. Rptr. at 539 (quoting *Rowland* v. *Christian,* 69 Cal. 2d 108, 113, 443 P.2d 561, 564, 70 Cal. Rptr. 97, 100 (1968)). The California Supreme Court concluded in *Coulter* that the "strong public policy to prevent future injuries [involving drunk driving]" warranted the recognition of a duty on the part of a social host not to increase the obvious intoxication of a guest when the host knew that the guest intended to drive a motor vehicle. *Id.* at 153, 577 P.2d at 674, 145 Cal. Rptr. at 539.

In considering the imposition of a similar duty, the New Jersey Supreme Court stated:

> In most cases the justice of imposing such a duty is so clear that the cause of action in negligence is assumed to exist simply on the basis of the actor's creation of an unreasonable risk of foreseeable harm resulting in injury. In fact, however, more is needed, "more" being the value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care. . . . "[W]hether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."

*Kelly, supra,* 96 N.J. at 544, 476 A.2d at 1222 (quoting *Goldberg* v. *Housing Authority of Newark,* 38 N.J. 578, 583, 186 A.2d 291, 293 (1962) (emphasis in original)). The New Jersey Supreme Court stated, "[w]hen the court determines that a duty exists and liability will be extended, it draws judicial lines based on fairness and policy." *Id.* at 544, 476 A.2d at 1222. Thus, that court recognized the societal goal of reducing the dangers associated with drunken driving in holding a social host:

> liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by the intoxication. We impose this duty on the host to the third party because we believe that the policy considerations served by its imposition far outweigh those asserted in opposition.

*Id.* at 548, 476 A.2d at 1224.

Turning to the present case, one crucial element is missing; our imprimatur that a legal duty exists. Our Court should not recognize a new cause of action or enlarge an existing one without first determining whether there is a compelling public policy reason for the change.

In a recent decision by an intermediate New Jersey appellate court, the court declined to follow the lead of *Kelly* as "*Kelly* expressly limited the liability of a host to 'injuries resulting from the guest's drunken driving.'" *Griesenbeck* v. *Walker,* 199 N.J. Super. 132, 138, 488 A.2d 1038, 1041 (Super. Ct. App. Div.) (quoting *Kelly, supra,* 96 N.J. at 559, 476 A.2d at 1230), *cert. denied,*

101 N.J. 264, 501 A.2d 932 (1985). That case involved a suit against a social host for injuries allegedly resulting from the actions of an inebriated guest. The injuries were sustained in a house fire which was caused by a cigarette left smouldering in a sofa. On the facts of the case before it, the court in *Griesenbeck* declined to recognize a duty on the part of the social host.

> [T]here is lacking the public interest which induced the [New Jersey] Supreme Court in *Kelly* to impose a duty upon a social host toward those injured as the result of the intoxicated guest's operation of a motor vehicle. While it might be said that drunkenness, in itself, is a societal problem, we do not consider it necessary, as being supportive of a social goal, to extend a host's liability for the serving of liquor to an intoxicated guest to harmful acts of the guest not related to the operation of a vehicle and otherwise unforeseeable.

*Id.* at 139, 488 A.2d at 1042.

No compelling social policy reasons have been pointed out for this Court to impose a legal duty of care on a social host, absent a situation where the social host furnishes alcoholic beverages to one who is visibly intoxicated and it is foreseeable to the host that the guest will thereafter drive an automobile, or, where the social host furnishes alcoholic beverages to a minor.

*Affirmed.*

**Peck, J.,** concurring. I agree with the result affirming the lower court's dismissal of plaintiff's complaint and the grounds upon which the affirmance is based. However, there is much that is stated in the opinion with which I do not agree. Accordingly, I feel compelled to submit this concurring opinion to indicate those areas in which my objections lie.

I.

Without yet listing the specific items in the opinion with which I cannot agree, I have an overall objection that applies equally to all of them. They address hypothetical questions of law that do not fall within the scope of the facts that gave rise to this litigation. They are not in the case and, accordingly, are not properly before us for resolution. They contribute nothing to the result;

they are extraneous to anything before us. They constitute an improper attempt to make law by dicta; they are advisory opinions at best. The opinion has overstepped the boundaries of this Court's proper appellate functions.

The judicial power, as conferred by our State Constitution upon this Court, is " 'the right to determine *actual controversies* between adverse litigants, duly instituted in courts of proper jurisdiction . . . .' It is 'the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.' " *In re House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (emphasis added) (citation omitted).

This Court has held consistently, since *In re House Bill 88, supra,* that purely advisory opinions are not within the scope of the judicial powers and functions conferred by the Vermont Constitution. Accordingly, we have, also consistently, declined to render such opinions. *State* v. *Nash,* 144 Vt. 427, 435, 479 A.2d 757, 761 (1984)[1]; *Chesshire* v. *New England Telephone & Telegraph Co.,* 139 Vt. 323, 325, 428 A.2d 1106, 1107 (1981); *Wood* v. *Wood,* 135 Vt. 119, 120-21, 370 A.2d 191, 192 (1977).

Courts have no legitimate standing to seek out and decide, sua sponte, purely hypothetical issues of their own invention merely because they are intriguing, or because a court is impatient that an issue has not yet been raised by litigants. Yet that is precisely what the majority opinion here has done. It is no less extra-judicial merely because it is contained in an otherwise proper opinion. A wax apple does not change, regardless of its natural appearance, simply because it is placed among real apples in a barrel.

In the case at hand there are only two legitimate issues: (1) whether plaintiff, as an intoxicated person, has a cause of action against defendant Walter Kurkul, Sr., his social host, under the Vermont Dram Shop Act, and (2) whether plaintiff has a cause of action against his host under the common law doctrine of negligence. When the opinion goes beyond these two issues to address questions which are not in the case, the Court, to adopt a phrase from corporate law, is acting "ultra vires"; all the more so because there is, literally, no power on earth which can prevent such an

---

[1] In *Nash, supra,* we expressly declined to address a "hypothetical factual situation," holding that to do so would be advisory and not authorized under the Vermont Constitution.

action by the judiciary. "[T]he only check upon our own exercise of power is our own sense of self-restraint." *United States* v. *Butler*, 297 U.S. 1, 79 (1936) (Stone, J., dissenting).

One of the attendant wrongs against justice under the judicial system, inherent in the lack of restraint of which I complain here, lies in the fact that the court itself becomes an unopposed advocate for a stated position or theory of law. No opportunity to be heard is afforded those persons or interests who may have a contrary position. Those whose views might be to the contrary, and for all we know might be persuasive, are denied their day in court.[2] In my view such action is a serious abuse of judicial power.

## II.

Section I of this concurring opinion expresses my strong objection to the use of an appellate judicial opinion as a medium for deciding questions of law that are purely hypothetical. However, my disagreement with such a course of conduct does not exist in a vacuum; in the instant case, I disagree also with the resolution of these hypothetical issues.

## A.

The opinion commences its digression into hypotheticals by holding that the Dram Shop Act (Act) does not "preempt a remedy under the common law in situations such as the one presented in this case." The basis for this view appears to be that the Act does not address a common law action in negligence. Therefore, such an action is not precluded, and is part of the law of Vermont under 1 V.S.A. § 271, simply because negligence actions exist at common law.

In my view this conclusion is too limited and superficial. The question is not whether common law negligence actions exist in Vermont, but whether such actions are to be extended to situations such as the one presented here, as well as to cases involving minors and third persons, or whether existing statutes and constitutional law preempt or preclude such a remedy.

---

[2] "That I suffer not myself to be prepossessed with my judgment at all, till the whole business and both parties be heard." Sir Matthew Hale, *History of the Common Law* XV (4th ed.).

"He who decides a case with the other side unheard, though he decide justly, is himself unjust." Seneca, *Medea.*

In a proper approach to the question of preemption, we must look, not only to the Act, but to all legislation dealing with the control of the sale and use of alcoholic beverages as well as any pertinent provisions of the Vermont Constitution. The Act is but one part of the legislative scheme relating to intoxication and to control of the sale or furnishing of liquor.

The opinion expresses the view, with which I agree, that if the legislature intended to include the drunk among those entitled to an action in strict liability under the Act, against one who furnishes liquor, it would have said so. Similarly, but on a broader scale, if the legislature intended that those who otherwise qualified could choose between two remedies, i.e., under the Act in strict liability, or under common law in negligence, it would also have said so. But there is no language in the Act comparable to that commonly found in instances where a special statutory remedy is provided, with alternative common law remedies expressly recognized. Thus, for example, 13 V.S.A. § 7043(g), relating to the restitution which a court may order paid to the victim of a crime, provides: "No restitution ordered under this section precludes a person granted such relief from pursuing an independent civil action." Significantly, there is no comparable right to an alternative common law civil action, sounding in tort for negligence or otherwise, in the Act.

Looking further into the legislative scheme for control of the sale, furnishing, and consumption of alcoholic beverages, we find, not only a substantial body of statutory law on the subject extending far beyond the Act, but also a continuing attention to the subject: new bills, new laws and amendments appear at virtually every session of the General Assembly. It is relevant to this inquiry that there are bills presently pending before the legislature which, if enacted, will extend the Act to include the strict liability of social hosts to injured third persons (House Bill 207), and raise the minimum drinking age to 21.[3] It is no answer to say that these bills may not pass; their fate is not material to the question of preemption. Thus, if H.207 is adopted, it becomes law, and even stronger than common law negligence since it would impose strict liability. If it is rejected, we can be satisfied that the legislature

---

[3] I am informed by the Legislative Council office that, as of the date of this writing, there are six bills relating to DUI alone pending before the present session of the General Assembly.

does not see fit to impose social host liability. Accordingly, I must regard a resolution of the question by this Court, especially in the form of an arbitrary advisory opinion, as simply a race with the legislature to "git thar fustest with the mostest,"[4] and, by ignoring the constitutional limitations on its powers, impose a new law upon the people of this state by judicial legislation.

As the last statement above indicates, we may also approach this advisory holding through its constitutional aspect: the doctrine of separation of powers. The section of the Vermont Constitution which establishes this doctrine as law in this state is Chapter II, § 5, which reads: "The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others."

It is axiomatic that the *primary* function of legislatures, indeed the very reason for their existence, is to *make the laws*, while it is the *primary* function of the courts to resolve actual disputes in matters within their jurisdiction between contending parties, that is, to *interpret* and *apply* the laws to particular cases:

> Judges ought to remember that their office is *jus dicere*, and not *jus dare*; to interpret law, and not to make law or give law.

F. Bacon, *Essays: Of Judicature* (1597).

I think it is upon these truisms that the doctrine of judicial restraint (which I will address hereafter) is based. For my immediate purpose, however, the opinion argues that since applicable common law "not repugnant to the constitution or laws shall be laws in Vermont. . . . ," 1 V.S.A. § 271, therefore, an action in negligence in matters such as the instant case is not foreclosed.

This rationale lacks analytical depth. Not only is the Constitution *law*, it is the most fundamental of *all* our state law. It is the law with which all other laws must conform or be struck down upon proper challenge. It follows, inescapably, that simply because common law *actions* in negligence generally are not contrary to the law, it does not mean that a specific action can *never* be. Particularly is this so if the proposed substantive law, for which a right of action is merely the procedural device, is contrary to a constitutional prohibition and, therefore, contrary to

---

[4] A comment attributed to confederate General Nathan Bedford Forrest, but probably apocryphal.

the law. Thus, the majority opinion fails to distinguish between mere procedure, that is, the right of action, and the substantive aspect, in this case, social host liability, of which the procedure is no more than a servant. Social host liability has never before been part of the common law of Vermont.

I recognize that Chapter II, § 5 of the Vermont Constitution does not require an absolute separation of functions. The line of demarcation is not always well defined or clear. Some "overlapping or blending" of the powers exercised by each of the three departments may be inescapable. *Trybulski* v. *Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 6-7, 20 A.2d 117, 120 (1941). Nevertheless, the border line does exist, *State* v. *Jacobs*, 144 Vt. 70, 75, 472 A.2d 1247, 1250 (1984); to breach that line when it is reasonably discernable "violate[s] the border lines drawn by the constitutional doctrine of separation of powers," *id.*, and "would constitute judicial legislation." *Id.*

I will not quibble with the interpretation in the opinion of a holding in *Harrington* v. *Gaye*, 124 Vt. 164, 166, 200 A.2d 262, 263 (1964), that legislative intent cannot be ascribed to a mere act of omission. But in this case we have much more than a mere act of omission; we have a wide-ranging body of statutory law as evidence of legislative preemption. More to the point here is the statement by United States Supreme Court Justice Louis D. Brandeis. "A *casus omissus* does not justify judicial legislation." *Ebert* v. *Poston*, 266 U.S. 548, 554 (1925).

That comment by Justice Brandeis is one that the judiciary will do well to bear in mind. It is particularly apropos here. Simply because the legislature has not yet enacted social host liability into law is not sufficient, standing alone, to justify the holding contained in the opinion. The laws relating to alcoholic beverages are so broad and comprehensive, so continuously evolving and increasing in scope, that legislative preemption of the field is clear to anyone who does not deliberately close his eyes to it. This being so, the few remaining omissions remain also within the scope of the exclusive powers of the legislative branch of government. They do not lie along the misty "overlapping or blending" borderline. Accordingly, the extension of common law negligence to a social host issue *does* violate the law; it is repugnant to Chapter II, § 5 of the Vermont Constitution. See *State* v. *Jacobs, supra.*

## B.

The dissent expresses the view that the result reached by the majority opinion is based on the concern "that this Court would be 'judicially legislating' if it were to entertain this cause of action." However, an examination of the majority opinion does not indicate any such concern as the basis for the result. The basis for the result stops at policy; it goes no further.

I have concurred in the majority result in this case, because it is right in itself. Nevertheless, I am disappointed that the rationale did not go further. I have become increasingly concerned with the tendency of too many courts and judges to look upon themselves as ministers, specially ordained to decide for the people what the people need or want, and what is or is not good for them. In putting this belief into practice, the courts all too often usurp the law-making powers of their legislatures; they deliberately ignore the limitations implicit in their basic function and purpose, which is, as noted earlier, to resolve disputes between litigants under *existing* law; *jus dicere*, not *jus dare*.

To the limited extent the courts do have the power to make law, it should be exercised with caution, even reluctance, and certainly with great restraint. "[J]udicial law-making should always be cautiously employed and should be severely restricted in scope." *New England Coal & Coke Co.* v. *Rutland R. Co.*, 143 F.2d 179, 189 (2d Cir. 1944). There has been only a brief passage of time since this Court recognized its duty of restraint: "State courts . . . have a *duty of judicial restraint* which encompasses . . . deference to legislative exercise of the sovereign power allocated to that body by the state constitution." *State* v. *Ludlow Supermarkets, Inc.*, 141 Vt. 261, 267, 448 A.2d 791, 794 (1982) (emphasis added).

Comparing this statement in *Ludlow* with today's arbitrary resolution of hypothetical questions, it is painfully apparent that this Court will give lip service to judicial restraint when it serves a desired result to do so, and ignore it when it stands in the way of a result, or else the Court has little concern for either the legislature and its constitutional prerogatives, or for judicial restraint.

In the case of social host liability for injuries by drunks to third persons, and where liquor is furnished to minors, neither of which is in any way involved here, the majority opinion is addressing hypotheticals in their purest form by holding that a common law

action of negligence will lie against the host who furnished the liquor in favor of a third party injured as a result of a "guest's drunken driving" and, if I read the opinion correctly, in favor of a minor if he is injured as a result of his own intoxication. But in this matter we are not involved with either a "third party" or a minor.

Moreover, notwithstanding this prohibited legislating in its most egregious form, it escapes me entirely what it is that so eminently qualifies the five justices who make up this Court at any given time, whose training and experience, for many years, has been almost entirely in the "nice sharp quillets of the law," Shakespeare, King Henry VI, Part I, II, Sc. 4, that they become suddenly and eminently qualified to recognize and winnow out, from the morass of human interests and concerns, exactly what it is the people *need*, and what the people *demand*. Apparently it is this wisdom and insight which enables us to mold, from the vague and formless clay of "needs" and "demands," new laws which are as binding on the people as if they had been enacted by the legislature itself after the public hearings and due deliberation characteristic of the legislative process, as distinguished from the in camera secrecy and denial of popular access and input which shrouds judicial law-making.

United States Supreme Court Justice Louis D. Brandeis is quoted as having said: "There is no reason why five gentlemen of the [United States] Supreme Court [a majority] should know better what public policy demands than five gentlemen of Congress." A. Mason, *Brandeis: A Free Man's Life*, 427 (1946). I agree with this, but would go even further to add that the *full* bench of this Court is far less qualified, if they are qualified at all, to determine what the public needs and demands, than is the full legislature, with its procedures for receiving public input, and its large number of representatives and senators who have widely varied occupations and backgrounds. Even if the passage of an act by the legislature is no necessary guarantee of wise law, it is, nevertheless, the legislature, not the courts, which has both the right and duty under our State Constitution to make the laws. Except in a very limited sense this is not a concurrent "right and duty" which must be shared with the judiciary, at the whim of the latter.

Except for the narrow disagreement on the final result, the majority opinion and the dissent are similar. They express themselves in different words, but say very much the same things. Es-

sentially they both rely on language which has been used by courts for years to justify an expansion of their powers. In brief, the argument is that whenever the courts find something which *they* perceive to be a social need or demand, they have a duty to sally forth like knights errant and enact new laws to resolve these needs and demands. This statement, in whatever language it is expressed, has become such a cliche and so useful as an excuse for implementing almost any judicial whim, that it is accepted and relied on by succeeding generations of courts without a thought of questioning the universal validity it does not have. And yet, it is the very foundation for the increasing exercises in judicial legislation and violations of the separation of powers doctrine espoused by too many courts. Such language, however, is entirely court-created and self-serving; it is much abused. It gives credibility to a phrase having some currency among critics of the courts: "The Imperial Judiciary." The phrase is, regrettably, all too appropriate.

However learned in the law appellate judges may be, I agree completely with Supreme Court Justice Felix Frankfurter, when he said: "Justices of the Court are not architects of policy . . . they are *incapable* of fashioning their own solutions for social problems." F. Frankfurter, *Mr. Justice Holmes and the Supreme Court*, 25 (1938) (emphasis added). What all too many courts are doing is to equate legal knowledge with universal knowledge, without any basis in fact or logic. My own experience at this point is that judicial legislation often consists of little more than the personal philosophies and subjective reactions of individual justices to the specific case which engenders new law. Little legitimate research is directed to its sociological impact, or to the needs and demands of the people in fact. The Court simply drops its bomb and flies on; it strikes out blindly, having neither the resources, the time, or the qualifications to conduct or evaluate impartial research.

The majority opinion seems to imply, and the dissent claims, that courts have a *duty* to legislate when they believe they have unearthed a social need or demand, as if this duty was a command brought to them engraved in stone from an unidentified deity. Such a bland statement obscures the true source of this duty. It came into being and exists only because the courts themselves say it exists. It is not imposed by the legislature or the Vermont Constitution. In fact it is not a duty at all; it is a power.

Even as such, however, it is limited by the constitutional doctrine of separation of powers. The frequent violations of that doctrine, and abuses of that power, do not convert it into a duty. The claim of duty cannot justify today's judicial legislation based on hypotheticals; as a duty it does not exist at all; as an exercise of power in this case, it is an abuse.

The finding of a duty leads the dissent to quote from *Hay* v. *Medical Center Hospital*, 145 Vt. 533, 543-44, 496 A.2d 939, 945 (1985): "When confronted with these difficult and complex issues, this Court did not shirk its duty and retreat into the safe haven of deference to the legislature." Aside from being a well-turned phrase designed to suggest that courts who respect the limitations of their powers, and refrain from abuses, are timorous judicial cowards, hiding behind the skirts of their sister branch of government, this doesn't mean very much. I do not suggest for a moment that the courts may *never*, in any conceivable circumstance, extend the common law to the point of making new law. My claim here, aside from the nonissue decisions, goes only to *this* case. Beyond that I intend no more than to express my concern, without a litany of specifics, that courts are, increasingly, demonstrating a serious disrespect for legislative prerogatives, judicial restraint, and the separation of powers. It is not "shirking" a duty when the Court recognizes and respects its constitutional limitations. The legislature is not a "safe haven" for timid judges; it is the law-making branch of state government under the Constitution.

It serves no meaningful purpose either to cite, as does the dissent, cases from the past in which this Court made new law. I say this for two reasons. First, the Court may have been wrong and abused its power in one or more of those cases. If so, they do not make today's action right; two or more wrongs never did that. Secondly, if the action *was* properly taken in any of the cases cited, or in any others on the books, they do not serve as a precedent for this case. Each one of them, including the instant case, lie in entirely different areas of social concern, and each has its own separate evidence of legislative preemption. Each case must stand on its own.

In the matter before us, the evidence of legislative preemption is overwhelming. A case for judicial restraint, the separation of powers and respect for our sister branch of government clearly

appears.[5] It would not have been a "retreat" to have done so; it would have demonstrated our courage and character as judges in resisting a heady temptation, which, I am grateful to acknowledge and join, appears at least in the result.

I cannot resist recording that my colleague, Justice Gibson, in good humor, called my attention to the fact that, in support of his dissent, he cites and quotes from a law review article by a writer with the same surname as my own. I can respond to this only with the equally good humored comment that, if the article does truly support the dissent, there are at least two "Pecks" who will never combine to make half a bushel.

**Gibson, J.,** dissenting. I agree with much of what has been said in the majority opinion. However, in restricting the liability of social hosts to cases involving drunk drivers and minors, the majority draws too fine a "judicial line." Once a cause of action in negligence is recognized for the overserving of alcohol to obviously intoxicated potential drivers and minors, it is difficult, if not impossible, to deny the existence of a cause of action in other egregious situations. It takes but little imagination to conceive of circumstances wherein a social host would have an equal, if not greater, legal duty to refrain from serving alcoholic beverages to a visibly intoxicated person. Certain incidents have already led to litigation. E.g., *Clendening* v. *Shipton*, 149 Cal. App. 3d 191, 196 Cal. Rptr. 654 (1983) (foreseeability of intoxicated guest assaulting own wife and breaking her neck, after being overserved by social hosts, held to be a jury question; incident predated California legislation that precluded social host liability); *Cantor* v. *Anderson*, 126 Cal. App. 3d 124, 178 Cal. Rptr. 540 (1981) (developmentally disabled person, known to lose control and become

---

[5] In two decisions, *Vesely* v. *Sager*, 5 Cal. 3d 153, 486 P.2d 151, 95 Cal. Rptr. 623 (1971), and *Coulter* v. *Superior Court*, 21 Cal. 3d 144, 577 P.2d 669, 145 Cal. Rptr. 534 (1978), the California Supreme Court held that social hosts were liable for injuries caused by a guest to whom they had furnished alcoholic beverages. The legislature of that state responded by abrogating the Court's holding in these cases, citing them expressly by name, through a statutory amendment. After expressing its "intent . . . to abrogate the holdings in [the above cited cases]," the amended statute expressed the will of the legislature to restore traditional social host immunity. See California Civil Code Section 1714 (1978). The point is not the wisdom of either the court or the legislature; it is, rather, that the right and power to legislate lies with the representatives of the people, elected for that purpose, not with the courts.

violent when drinking, attacked woman after being served alcohol by social hosts; California statute precluding social host liability held not to bar liability when alcohol is served to an incompetent person known to be unable voluntarily to resist its consumption); *Taggart* v. *Bitzenhofer*, 33 Ohio St. 2d 35, 294 N.E.2d 226 (1973) (tavern patron, who was furnished liquor after showing pistol and threatening to shoot two other patrons, made good his threat one-half hour later, killing one and wounding the other).

> What is at issue . . . is not whether social hosts should *always* or even *generally* be liable. It is whether all persons should be immune from civil liability for purveyance of alcohol, as a matter of law, simply because they do not own a bar or a liquor store. "It makes little sense to say that the licensee . . . is under a duty to exercise care, but give immunity to a social host who may be guilty of the same wrongful conduct merely because he is unlicensed."

Koloff, *The Torts of the Intoxicated: Who Should Be Liable?* 15 Colum. J.L. & Soc. Probs. 33, 50-51 (1979) (emphasis in original) (quoting *Linn* v. *Rand*, 140 N.J. Super. 212, 217, 356 A.2d 15, 18 (1976)).

The "immunization of hosts is not the inevitable result of the law of negligence, for conventional negligence analysis points strongly in exactly the opposite direction." *Kelly* v. *Gwinnell*, 96 N.J. 538, 543, 476 A.2d 1219, 1221 (1984). In Oregon, when a social host " 'has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreasonable things' " when intoxicated, the host who furnishes alcohol to such persons may be held liable for injuries caused by them as a result of their intoxication. *Wiener* v. *Gamma Phi Chapter of Alpha Tau Omega Fraternity*, 258 Or. 632, 639, 485 P.2d 18, 21 (1971) (quoting Prosser on Torts § 33, at 175 (3d ed. 1964)). Such an approach requires "[n]o legislative enactment . . . ; it is ordinary tort law." *Manning* v. *Andy*, 454 Pa. 237, 242, 310 A.2d 75, 77 (1973) (Pomeroy, J., concurring).

The pleadings herein make no representation as to whether plaintiff is a person who is especially likely to do unreasonable things when intoxicated or whether defendant had reason to know of any such characteristic on the part of plaintiff. I would remand the case to allow plaintiff the opportunity to amend his

pleadings to set forth the necessary allegations, and if he does so, to prove his case.

As for the concern of the majority that this Court would be "judicially legislating" if it were to entertain this cause of action, we must not stick our heads in the sand when there is a demonstrated need for a change in the common law. "The development of the law of torts has been and is now peculiarly a function of the common law judge." *Lewis* v. *Wolf*, 122 Ariz. 567, 571, 596 P.2d 705, 709 (Ariz. Ct. App. 1979). In fact, "there is a remarkable dearth of legislative incentive to consider or initiate reforms of tort law." Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law*, 48 Minn. L. Rev. 265, 296 (1963). The judiciary must take cognizance of the vitality of the common law; as the needs of a society evolve, we are obligated "to face a difficult legal question and accept judicial responsibility for a needed change in the common law." *Hay* v. *Medical Center Hospital*, 145 Vt. 533, 543, 496 A.2d 939, 945 (1985).

The Vermont Supreme Court has frequently resolved difficult problems by reevaluating the common law. E.g., *id.* at 545, 496 A.2d at 946 (minor may recover for loss of parental consortium); *Sheltra* v. *Smith*, 136 Vt. 472, 392 A.2d 431 (1978) (recognized tort of intentional infliction of emotional distress).* As was so well stated in *Hay, supra,*

> [m]any of these cases have produced change which would have a profound effect on social and business relationships, such as industry-wide insurance patterns, husband-wife relationships, and lessor-lessee obligations, to mention only the most obvious. When confronted with these difficult and complex issues, this Court did not shirk its duty and retreat into the safe haven of deference to the legislature. It is the responsibility of the courts to balance competing interests and to allocate losses arising out of human activities. One of the principal purposes of the law of torts is to compensate people for injuries they sustain as a result of the negligent conduct of others.

*Hay, supra,* 145 Vt. at 543-44, 496 A.2d at 945 (citing Prosser & Keeton, Law of Torts § 1, at 6 (5th ed. 1984)).

---

* See *Hay, supra,* 145 Vt. at 543-45, 496 A.2d at 945-46, for additional cases in which this Court has modified common law principles.

A court does not overstep its proper bounds when, in the absence of legislative mandate, it creates a new cause of action to meet a societal need.

> [R]ecognition of the judiciary's reform function with respect to the law of torts involves no actual conflict with the legislature. Arguments to the contrary are based on an artificial view of the legislative process or a rigid and doctrinaire view of the common law. Indeed, . . . judicial activity may well complement the representational system of government, apprising the legislature of matters that would otherwise be ignored in the turmoil of the legislative process.

Peck, *supra*, at 292-93.

"[U]ntil the legislatures act, the problem sits squarely in the lap of the judiciary. Reform in this area should [not] be hindered . . . by narrow conceptions of the judicial function . . . . The intoxicated tortfeasor *is* a social problem." Koloff, *supra*, at 60 (emphasis in original).

I would, therefore, remand this case to allow plaintiff an opportunity to make an appropriate amendment to his pleadings. Only if he fails to do so should the case then be dismissed.

I am authorized to say that Justice Hill joins in this dissent.

