## State of Vermont v. David A. Jacobs

[472 A.2d 1247]

No. 82-282

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed January 13, 1984

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Peck, J.** This is an interlocutory appeal, 12 V.S.A. § 2386(b), V.R.A.P. 5(b) (1), instituted by defendant, a juvenile at the time these proceedings were commenced*, from an order of the district court dated February 26, 1982, denying his motion for transfer of his case to the juvenile court. 33 V.S.A. § 635(b). Defendant stood charged on the criminal docket of the court with one count of breaking and entering in the daytime with intent to commit larceny, in violation of 13 V.S.A. § 1202, and one count of receiving and aiding in the concealment of stolen property, contrary to the provisions of 13 V.S.A. § 2561.

In granting defendant permission to appeal, the court found that its order involved a controlling question of law, as to which there is substantial ground for difference of opinion. The question presented is the sufficiency of the findings to support the court's conclusion that defendant's case should not be transferred to the juvenile court.

Unlike the situation presented in *State* v. *Powers*, 136 Vt. 167, 385 A.2d 1067 (1978), there was, in the instant case, a hearing on the merits of the motion to transfer. Defendant

---

* Defendant became eighteen on February 15, 1983.

was asked expressly by the trial court if he wished to present evidence. It is true that the procedure followed was dangerously informal, and not to be encouraged as a prototype. It consisted primarily of arguments by counsel for defendant and the deputy state's attorney (hereinafter state's attorney), and unsworn testimony made on behalf of defendant's position by his guardian ad litem, his mother and older sister, a representative of the State Department of Social and Rehabilitation Services, and by defendant himself. None of these statements were made under oath; nevertheless, the purported "findings" that are based thereon cannot stand as such, since they are merely recitations of the statements and opinions of these witnesses. *Krupp* v. *Krupp*, 126 Vt. 511, 515, 236 A.2d 653, 655 (1967).

Defendant's prior record was conceded, and placed before the court without objection or dispute except as to its effect on his motion to transfer.

In a 1978 case involving a similar motion for transfer, Justice Larrow wrote on behalf of the Court:

> 33 V.S.A. § 635(b) makes transfer to juvenile court . . . *discretionary* with the trial court. But we think more is involved than judicial whim, and that attainment of the salutary purposes of the juvenile statutes calls for the exercise of *sound judicial discretion* . . . . *Adequate findings of fact are required,* so that we may determine whether the sound discretion implicitly mandated by the statute was in fact exercised. . . . A hearing, and findings of fact resulting therefrom, must be accorded the respondent . . . so that the purposes of the statute may be met.

*State* v. *Powers, supra,* at 169, 385 A.2d at 1068 (citations omitted; emphasis added).

The requirement of a hearing having been satisfied in the instant case, we must determine whether the valid findings are supported by the evidence and, if they are, whether they are sufficient both to support the order and to inform the parties and this Court of the reasons for the order as an aid in determining whether the sound discretion on the part of the court below, required by *Powers,* has been exercised.

The findings, which state the prior record of the defendant while still a juvenile, are clearly supported. As noted above, his juvenile record was conceded and properly before the court as evidence for its consideration. It was not a good one. In June of 1978, defendant was charged in a delinquency petition with two counts of unlawful trespass involving property damage. However, this petition was dismissed by the state's attorney when restitution was made for the damages. The record does not show whether defendant made restitution from his own earnings, or if it was made for him.

On November 17, 1981, defendant admitted his guilt in connection with an unlawful trespass into a filling station in June 1981, and was adjudged a delinquent child. At the disposition hearing he was placed on probation, directed to be in his home from 7:00 p.m. to 6:00 a.m., to accept counseling as directed by his probation officer, to attend school, and to make restitution. The court found he had "substantially abided by his probation conditions."

On September 28, 1981, the instant case was commenced. The state's attorney filed an information charging defendant with breaking and entering in the daytime (on September 28, 1981) with intent to commit larceny in violation of 13 V.S.A. § 1202. A second information charging him with receiving stolen property (on October 4, 1981) contrary to the provisions of 13 V.S.A. § 2561 was filed on November 9, 1981. He entered a plea of not guilty to both charges, although for purposes of this proceeding, an affidavit of the investigating officer, apropos the first charge, indicates that he was discovered and detained by the property owner in the latter's home until the police arrived. Later at the police station he made an obscene gesture and shouted an obscene comment at the officers. An officer's affidavit concerning the second charge alleges that, in the presence of his mother and the officer, defendant "admitted that he was with (another person) when (the latter) busted into the juke box at Amy's game room. That he received from (the other person) about $15.00 that came out of the juke box." These two alleged offenses are involved in the present proceedings for which the transfer is requested. He was arraigned on both charges on September 28, 1981, and November 9, 1981, respectively.

▉ Unfortunately, at least two of the court's findings are not findings at all. One of these merely recites the views of defendant's probation officer and his guardian ad litem without making any affirmative finding. Another purported finding simply summarizes the arguments and position of the state's attorney: "The State's Attorney felt . . . ," etc. Obviously, the prosecutor was not a witness, nor were his statements evidence. In any event, these purported findings are of the type we condemned in *Krupp* v. *Krupp, supra,* and in several decisions before and since. For whatever reason, they continue to recur from time to time. In short, they are merely the recitation of the testimony of witnesses, and here, indeed, even the views of a nonwitness. They are not, and cannot, stand as findings. *Id.*

In view of the above, our review is necessarily limited to those findings which are legitimate under *Krupp*. In the instant case they are virtually limited to those findings based upon the admitted evidence of defendant's record as a juvenile. We must determine their sufficiency.

Defendant's request for a certified question contained in his motion for an interlocutory appeal, and the lower court's adoption of that question, could have limited the scope of our review. The question asks if the findings are sufficient under *Kent* v. *United States*, 383 U.S. 541 (1966). This is an assumption that we have adopted the so-called *Kent* standards (actually defendant proposed a reduced version of those standards). The defendant cites our *Powers* opinion for his assumption. An examination of that case, however, discloses that *Kent* is relied on only for the procedural due process concerns of a hearing on the transfer motion, and adequate findings. We did not adopt standards in that case. On the contrary, we stated expressly, as noted above: "33 V.S.A. § 635(b) makes transfer to juvenile court . . . *discretionary* with the trial court." *State* v. *Powers, supra* (emphasis added). Adequate findings are, of course, required, as this Court also pointed out in *Powers*.

▉ We affirm *Powers* and decline to adopt specific standards, electing instead to review the exercise of discretion by the trial courts on a case by case basis. We adopt this course for two reasons. First, in enacting 33 V.S.A. § 635(b), the

Legislature did not see fit to promulgate any standards, leaving the decision to the discretion of the trial court. This interpretation is, we think, clear, when § 635(b) is read in the light of § 635a (transfers *from* the juvenile courts). The latter statute contains elaborate and detailed standards, nine in all. See 33 V.S.A. §§ 635a(c)(1), (2), and 635a(d)(1)–(7). In light of the fact that §§ 635 and 635a are not only adjoining statutes, but are in pari materia (both dealing with transfers), and in both cases were last acted on as part of the same enactment at the 1981 Special Session of the General Assembly, see 1981, No. 1 (Sp. Sess.), §§ 4, 5 (§ 635 amended; § 635a added), we think it is clear, that had the Legislature ever intended § 635 to require anything other than a sound discretionary judgment by the trial court, it would have said so by providing standards as it did in the case of its twin statute, § 635a. Under the circumstances it is impossible to attribute the difference to mere inadvertence. Nor is it a legitimate function of this Court to expand a statute by implication, that is, by reading into it something which is not there, unless it is *necessary* in order to make it effective. *Saund* v. *Saund*, 100 Vt. 387, 393, 138 A. 867, 870 (1927). To do so would usurp the exclusive prerogative of the Legislature; it would constitute judicial legislation, *Maurice Callahan & Sons, Inc.* v. *Armstrong*, 125 Vt. 213, 215, 214 A.2d 70, 73 (1965) (citing *Murphy Motor Sales, Inc.* v. *First National Bank*, 122 Vt. 121, 124, 165 A.2d 341, 343 (1960)), and violate the border lines drawn by the constitutional doctrine of separation of powers. Vermont Constitution, Chapter II, § 5.

Secondly, although the two "standards" recommended by defendant are certainly worthy of consideration by the juvenile court, they could, if adopted as mandatory, tend to limit the scope of the court's discretionary powers, and nullify or retard consideration of other possible factors. Such a limitation may, in specific cases, work as a detriment to the interests of the juvenile in some instances, and to those of the public in others.

The findings in this case are not ideal. Nevertheless, they set forth, with adequate clarity, defendant's record, which was properly before the court for its consideration, and are supported further by the affidavits of police officers which were not controverted in these transfer proceedings. Accordingly,

we cannot say the court's conclusion: "Juvenile probation is not feasible for dealing with [defendant] on the latest case," is wrong, or that the order is shown to be an abuse of the court's broad discretionary powers in these matters.

*Affirmed.*