## David Brown v. Department of Social Welfare

[571 A.2d 650]

No. 88-187

Present: Allen, C.J., Peck and Gibson, JJ., and Connarn, D.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed December 15, 1989

*Lila Richardson*, Vermont Legal Aid, Inc., Montpelier, for Plaintiff-Appellee.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Donna Watts* and *Ron Shems*, Assistant Attorneys General, and *Robin Curtis*, Law Clerk (On the Brief), Waterbury, for Defendant-Appellant.

**Peck, J.** The Department of Social Welfare appeals from a decision of the Human Services Board that reversed the De-

partment's decision denying claimant's application for Medicaid benefits for the period from August through December, 1986. At issue is whether a claimant may "tack" months of age-based disability to months of physical impairment in order to satisfy the twelve-month disability requirement. We reverse and remand.

Claimant moved to Vermont in February, 1986 to help his son operate an inn. During the summer of 1986 he was diagnosed as suffering from aortic stenosis, and his aortic valve was replaced on September 12, 1986. His surgeon estimated that the convalescent period "should have been complete by about 3 months." In late December, 1986, when his convalescence was expected to have been complete, he suffered a stroke. There is no dispute that claimant was disabled following the stroke. The evidence before the Board was inconclusive, however, as to the date on which his disability ended. Claimant's cardiologist indicated that he was capable of sedentary work in March, 1987, though he remained disabled with respect to vigorous work. Claimant and his wife, on the other hand, testified that even as of August 14, 1987—a year after the onset of the original symptoms that led to the aortic surgery—claimant suffered light-headedness and dizziness and was unable to perform meaningful work at the inn.

The Board found that

> it is difficult in the absence of clear medical evidence to make precise findings regarding the petitioner's residual functional capacity in the months following his stroke. It would be even more problematic to determine whether this highly educated and experienced individual was capable of some form of substantial gainful activity during the period in question.

The Board was unable to conclude that the disability arising from the surgery and the stroke was of a 12-month duration, as required under the Medicaid program.[1]

---

[1] The Vermont Medicaid Manual § M211.2 states as follows:
Disability is the inability to engage in any substantial gainful activity by

Claimant became automatically eligible for Medicaid benefits in December, 1986, the month he turned 65. He argued that he did not need to demonstrate twelve months of disability, since the onset of age-based eligibility automatically fulfilled that requirement. The Board agreed, concluding:

> Age, disability, and blindness are widely used measures and definitions of presumptive indigence. An individual without income and resources who falls into one of these "categories" is deemed not to possess the means and ability to be self-supporting. These categorical "conditions" must be permanent (age) or long-standing, i.e., 12 consecutive months (disability and blindness).
>
> . . . .
>
> In this case, it must be concluded that there is no rational basis to find that the petitioner was less "medically indigent" in August, 1986, than he would have been had he been younger but with a clear 12-month period of disability. Age, disability, and blindness all relate to an individual's presumed *ability to work*. In this sense, age (like blindness) *is* disability. Under the regulations, the petitioner had no more hope or expectation of being able to return to work after August, 1986, than he would have had had he been younger, and "disabled" for twelve consecutive months.

(Citations omitted; emphasis in original.) In short, the Board allowed the months of disability after August, 1986 to be "tacked" to the months following claimant's 65th birthday.

 The Department responds that tacking is barred by federal regulations implementing the Medicaid statute, 20 C.F.R. § 416.922(a), which states:

---

reason of any medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death or has lasted or can be expected to last for a continuous period of not fewer than twelve (12) months. To meet this definition, the applicant must have a severe impairment, which makes him/her unable to do his/her previous work or any other substantial gainful activity which exists in the national economy. To determine whether the client is able to do any other work, the client's residual functional capacity, age, education, and work experience is considered.

We cannot combine two or more unrelated severe impairments to meet the 12 month duration test. If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, even though the two impairments in combination last for 12 months.

Claimant argues that old age is not per se an impairment. See, e.g., *Maine Human Rights Comm'n v. Kennebec Water Power Co.*, 468 A.2d 307, 309 (Me. 1983). It is claimant who seeks to combine and equate the disability condition prior to the 65th birthday and the mere passage of time thereafter, arguing that "his age alone would be deemed to render him unable to work." Though he relies on a narrow definition of "impairment" for purposes of 20 C.F.R. § 416.922(a), he asks us to determine that old age is an impairment for purposes of reading § M211.2 of the Vermont Medicaid Manual. We agree with claimant that turning 65 does not amount to an "impairment" as that term is defined,[2] and consequently we hold that it is not a condition that can be tacked on to claimant's physical disability after August, 1986 for purposes of Medicaid eligibility.[3] Claimant cites no statutory or regulatory authority for the proposition that the 12-month continuous disability requirement is satisfied by adding the requisite number of months of presumed old age to an otherwise inadequate number of months of disability.

---

[2] 20 C.F.R. § 416.908 states in relevant part:

Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

[3] 20 C.F.R. § 416.922(a) concerns the question of whether impairments must be cumulated at the so-called step two severity test of the sequential disability evaluation. That issue has been much litigated, e.g., *Johnson v. Heckler*, 769 F.2d 1202, 1213 (7th Cir. 1985), after passage of the Social Security Benefits Reform Act of 1984, P.L. 98–460. We agree with claimant that the regulation was not intended to address the tacking of disability and old-age eligibility criteria. The policy and legislative battle over which impairments should be cumulated, and when, underscores the dubiousness of assuming, with no statutory or regulatory support, that disability and old-age eligibility criteria were intended to be interchangeable for purposes of computing months of continuous disability.

■■ The Medicare program should be interpreted liberally to provide needed coverage. *Gartmann v. Secretary, Department of Health & Human Services,* 633 F. Supp. 671, 679 (E.D.N.Y. 1986); *Ridgely v. Secretary, Department of Health, Education & Welfare,* 345 F. Supp. 983, 993 (D. Md. 1972), *aff'd,* 475 F.2d 1222 (4th Cir. 1973). On the other hand, if the language of a statute is plain "the intent is to be ascertained from the act itself." *Weissenstein v. Burlington Board of School Commissioners,* 149 Vt. 288, 292, 543 A.2d 691, 693 (1988). As we said in *State v. Jacobs,* 144 Vt. 70, 75, 472 A.2d 1247, 1250 (1984):

> Nor is it a legitimate function of this Court to expand a statute by implication, that is, by reading into it something which is not there, unless it is *necessary* in order to make it effective.

(Emphasis in original.) The premise that an agency administering this federally aided program or a court might lightly interchange the concepts of disability and old age to fulfill the general goal of liberal construction is unsound.

Claimant further responds that nothing in the legislative history of the adoption of Medicaid in 1965[4] reflects Congress' intention to require aged claimants to demonstrate an inability to work. That is a correct assessment of legislative intent, but not the rationale underlying our present decision. The Medicaid payments here at issue relate to the four months prior to claim-

---

[4] Claimant properly cites House testimony describing the new Title XIX as establishing "a single and separate medical care program to consolidate and expand the differing provisions for the needy which currently are found in five titles of the Social Security Act." 111 Cong. Rec. H 18325 (daily ed. July 27, 1965)(testimony of Rep. Mills, citing Conference Committee Report). This legislative history does not suggest, however, that Title XIX merged the eligibility criteria for all claimants. The stated goals of Title XIX did not include a blurring of program lines, as the careful and detailed delineations in the Vermont Medicaid Manual, § M211, suggest:

> An applicant for Medicaid must establish his/her categorical relationship to SSI/AABD by meeting one of the following requirements:
>
> (1) 65 years of age or over; or
>
> (2) blindness as determined by the state's disability determination agent, or by the receipt of Social Security Disability benefits . . . ; or
>
> (3) disability as determined by the state's disability determination agent, or by the receipt of Social Security Disability benefits.

ant's 65th birthday. It is illogical to require an applicant who has reached age 65 to demonstrate an inability to work, simply because he suffered an illness before reaching 65 which continued after he turned 65. It is equally illogical to argue that a claimant does *not* have to demonstrate an inability to work in order to receive payment for an illness suffered before reaching 65, simply because that illness continued past the critical age threshold, unless, of course, it continued long enough (i.e., 12 months) to demonstrate inability to work during the pre-65 claim period.

Since claimant was found to have been disabled beginning in August, 1986, the 12-month durational test requires claimant to show a continuing disability through July, 1987, seven months beyond his age-based eligibility for Medicaid. That outcome does not frustrate the purpose of Medicaid or any of its provisions. Compensation under Medicaid for the seven months after turning 65 is not at issue—bills otherwise coverable under Medicaid will be paid.

As to the approximately four months prior to December, 1986, the matter must be remanded to the Board to determine whether the disability that began in August, 1986 continued for twelve months. If it did, claimant would be eligible for Medicaid for those four months. If it did not, there was no Medicaid eligibility until claimant became 65 in December, 1986, after which there is no question as to coverage.

*Reversed and remanded.*