## State of Vermont v. Steven Buelow

[587 A.2d 948]

No. 89-346

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed December 14, 1990

Motion for Reargument Denied January 3, 1991

*John Quinn,* Addison County State's Attorney, Middlebury, and *Gary S. Kessler* and *Pamela Hall Johnson,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Sessions, Keiner, Dumont & Barnes,* Middlebury, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from denial of his motion to transfer his case from criminal to juvenile court. We affirm.

## I.

Defendant, who was fourteen years old at the time of the crime, is charged with murder while perpetrating a sexual assault on his seven-year-old cousin. The girl's body was found near her home three days after defendant had moved in with her family. Initially, defendant denied having committed the crime; indeed, he even participated in the search efforts. Two days after the homicide, however, he confessed to the killing during the administration of a polygraph test. He was then arraigned in criminal court in accordance with 33 V.S.A. § 632(a)(1)(B), which subjects to criminal proceedings persons between the ages of fourteen and sixteen who commit certain serious crimes. The court denied defendant's motion, made pursuant to 33 V.S.A. § 635(b), to transfer the case to juvenile court, and this appeal followed.

On appeal, defendant argues that (1) the court erred by applying a mandatory presumption of adulthood and by requiring an extraordinary standard of proof to overcome that presumption; (2) the court's denial of the motion to transfer was an

abuse of discretion because several of its findings and conclusions were unsupported by the record; and (3) the § 635(b) transfer proceeding violates due process because it vests absolute discretion in the court without prescribing any standards or burden of proof.

## II.

Defendant first argues that the trial court erred by assuming § 632(a)(1)(B) created a presumption that criminal proceedings were appropriate, by placing on defendant the burden of showing that juvenile proceedings would be more appropriate, and by requiring an extraordinary standard of proof to meet that burden. We disagree.

■■ Persons between the ages of fourteen and sixteen who are charged with certain serious crimes, including murder, "shall be subject to criminal proceedings as in cases commenced against adults, unless transferred to juvenile court." 33 V.S.A. § 632(a)(1)(B); see also 33 V.S.A. § 644(c) ("any proceeding concerning a child who is alleged to have committed an act specified in section 635a(a) of this title after attaining the age of 14 but not the age of 18 *shall originate* in district or superior court") (emphasis added). 33 V.S.A. § 635a(a) includes murder in its list of offenses. Accordingly, in situations where a fourteen-to-sixteen-year-old is charged with murder, the criminal court has exclusive original jurisdiction over the matter. Pursuant to 33 V.S.A. § 635(b), however, the court "may" transfer such a proceeding to juvenile court. In such case, the party seeking to transfer the proceeding out of criminal court has the burden of showing that the case does not belong there. *State v. Anderson*, 385 A.2d 738, 740 (Del. Super. Ct. 1978); *Carter v. State*, 382 So. 2d 871, 872 (Fla. Dist. Ct. App. 1980); *State v. Woodward*, 737 P.2d 569, 571 (Okla. Crim. App. 1987); *Commonwealth v. Wallace*, 495 Pa. 295, 299, 433 A.2d 856, 858 (1981). In the reverse situation, where a person is initially within the jurisdiction of the juvenile court, the party seeking a transfer to criminal court must show that juvenile court is an inappropriate forum. *Crosby v. State*, 71 Md. App. 56, 63, 523 A.2d 1042, 1045 (1987). No compelling reason has been offered as to why the moving party should not bear the burden of proof in each instance.

Defendant argues that §§ 634[1] and 635[2] generally indicate a presumption of juvenile court jurisdiction, and that even if § 632(a)(1)(B) creates a presumption of adulthood, the presumption "bursts" when the party seeking a transfer to juvenile court introduces any evidence supporting a conclusion that the defendant is a child. This reasoning is flawed in two respects. First, the more specific sections, §§ 632(a)(1)(B) and 644(c), control the question of jurisdiction. See *State v. Jarvis*, 146 Vt. 636, 638, 509 A.2d 1005, 1006 (1986) (when two statutory provisions, one general and the other specific, deal with the same subject matter, the more specific provision prevails). Second, defendant mistakenly borrows the concept of "presumption" from the context of the rules of evidence. In that context, a presumption is a device applied to allocate burdens of going forward with, or proving, the elements of a crime. See *State v. Dacey*, 138 Vt. 491, 494–95, 418 A.2d 856, 858 (1980). The instant statutes, however, concern jurisdiction, not the substantive adjudication of a crime. See *Calhoun v. State*, 397 So. 2d 1152, 1153 (Fla. Dist. Ct. App. 1981) (because decision regarding which court should prosecute juvenile does not create a new element of the crime or have anything to do with a substantive adjudication, it is not unconstitutional for juvenile to retain burden of justifying transfer to juvenile court).

■ Further, we disagree with defendant's assessment of the trial court's use of the words "presumption" and "extraordinary attributes." With regard to the former term, the court stated:

Although the Vermont Supreme Court has addressed questions regarding reverse transfers from criminal court to ju-

---

[1] 33 V.S.A. § 634(a) provides:

*Except as otherwise provided by this title,* jurisdiction of a child obtained by the juvenile court in a proceeding under this chapter shall be retained by it, for the purposes of implementing the orders made and filed in that proceeding, until the child attains his majority, unless terminated by order of the court prior thereto.
(Emphasis added.)

[2] Under 33 V.S.A. § 635, persons under the age of sixteen who are charged with a crime must be dealt with in juvenile court unless they have committed certain serious offenses, specified in § 635a(a), in which case the court "may" transfer the proceedings to juvenile court.

venile court, it has not specifically commented on who has the burden of proof in such cases. . . . Because the statute creates a presumption against the defendant's suitability for juvenile proceedings, the defendant must overcome that presumption before his case can be transferred to the jurisdiction of the juvenile court. Hence, the burden of proof lies with the defendant.

Although the court could have been more precise, the statement indicates the court's understanding of the fact that the criminal court had exclusive original jurisdiction and that the party seeking to transfer the proceeding had the burden of showing why a transfer would be appropriate.

Regarding the other term complained of, "extraordinary attributes," the court stated:

Considering the gravity and consequences of the defendant's alleged actions, the undeniably violent nature of the offense itself, the uncertainty as to the defendant's potential future conduct, and the certainty that the defendant will be released from all custody or supervision no later than his twenty-first birthday, less than seven years from now, it would be imprudent to transfer this case to the jurisdiction of the juvenile court. Furthermore, the legislature has clearly mandated that an individual of defendant's age who is alleged to have committed murder while perpetrating a sexual assault shall be subject to criminal proceedings. . . . Defendant does not present any extraordinary attributes that would remove him from the clear mandate of the statute. Consequently, defendant should remain within the jurisdiction of the criminal court.

In this context, "extraordinary attributes" is an unfortunate, but harmless, phrase. In its findings and conclusions, the court explicitly recognized that, despite the original jurisdiction in criminal court, it had the discretion to transfer the matter to juvenile court. The court then discussed in detail the various factors it would consider before coming to its decision. The most significant of those factors are summed up in the first sentence of the paragraph quoted above, which states the principal reasons for the court's decision not to transfer the case. The following two sentences, including the "extraordinary attributes" phrase, merely supplement the court's reasoning.

## III.

Defendant next argues that the court abused its discretion by making clearly erroneous and unsupported findings and conclusions. Defendant claims that the following findings were unsupported by the record: (1) that defendant's opposition to a family move resulted in family problems; (2) that defendant was evaluated as prone to impulsive and sometimes explosive conduct; (3) that there was uncertainty as to whether defendant posed a future risk to society; (4) that an evaluating physician examined defendant to determine whether he could be characterized as a sex offender; (5) that defendant viewed himself as a victim of his abusive stepfather; (6) that defendant fit within the general description of a pattern sexual offender even though he did not exhibit some of the classic signs of a sex offender; (7) that defendant did not have an anti-social personality but was prone to impulsive and sometimes violent conduct; and (8) that defendant possessed a sufficient level of maturity to understand the nature of the act of killing another human being.

Findings of fact "will not be set aside unless, taking the evidence in a light most favorable to the prevailing party and excluding the effects of modifying evidence, the findings are clearly erroneous." *Desrochers v. Perrault*, 148 Vt. 491, 494, 535 A.2d 334, 336 (1987). Even when there is substantial contrary evidence, findings supported by credible evidence must stand. *Id.* Upon review of the record, we conclude that the court's findings are supported by credible evidence.

The only challenged findings that merit further discussion are the court's determination that "[d]efendant viewed himself as a victim of his stepfather's abusive treatment and his family's continual move from one home to another," and that he "fit within the general description of a pattern sexual offender." The court heard testimony from defendant's expert that defendant did not set himself up as a victim or manifest some of the other characteristics of a typical sex offender. Another expert, however, stated in a psychological report requested by defendant that defendant's stepfather had been physically rough with him and that he felt frustrated and powerless regarding problems with his stepfather and his family's continual moving. In the same report, the expert also concluded that defendant

was frustrated by his inability to please his stepfather and was often hurt by his stepfather's reaction to him. This evidence, although not substantial or conclusive, is sufficient for the court to have found that defendant viewed himself as a victim of his stepfather's abusive treatment.

There was also evidence that defendant's home life was in turmoil at times, that he was temporarily placed in a foster home as a result of a physical confrontation with his stepfather, and that his stepfather admitted feeling anger toward him and having difficulty avoiding physical confrontations with him. According to defendant's expert, sex offenders are often victimized by those around them and learn that it is acceptable to vent their anger and frustration on others smaller than themselves. The finding that defendant, in some respects, fit the pattern of a sex offender was not clearly erroneous.

Defendant also contends that the court's determination that he should remain within the jurisdiction of the criminal court was an abuse of discretion because it was based solely on the fact he was a certain age and had committed a certain crime. We disagree.

█ Defendant asked the court to adopt the same standards that apply to transfers from juvenile court to criminal court. See 33 V.S.A. § 635a(d). The court properly declined to do so, pointing out that the Legislature had not adopted specific standards for transfers from criminal to juvenile court. See *State v. Jacobs*, 144 Vt. 70, 74–75, 472 A.2d 1247, 1250 (1984) (declining to adopt specific standards for transfer to juvenile court under § 635(b) because it is not a "legitimate function of this Court to expand a statute by implication . . . unless it is *necessary* in order to make it effective"). Rather, such transfers have been left to the sound discretion of the trial court and are reviewed on a case-by-case basis. *State v. Smail*, 151 Vt. 340, 341, 560 A.2d 955, 955 (1989).

█ The trial court did, however, apply the *Kent* factors, see *Kent v. United States*, 383 U.S. 541, 566–67 (1966), as permitted, but not mandated, by our prior decisions. See *State v. Willis*, 145 Vt. 459, 468, 494 A.2d 108, 113 (1985); *State v. Powers*, 136 Vt. 167, 169, 385 A.2d 1067, 1068 (1978). The first four *Kent* factors—the seriousness of the offense, the manner

in which it was carried out, the personal nature of the offense, and the merit of the charge—all weigh heavily against defendant. Cf. *State v. Lafayette*, 152 Vt. 108, 113, 564 A.2d 1068, 1070 (1989) (court would be justified in refusing to transfer case to juvenile court solely on grounds that simple assault was crime against person committed by defendant alone and was more serious than prior offenses). One of the remaining factors—the desirability of trial in one court when the juvenile's associates in the offense are adults who will be tried in criminal court—is irrelevant, and the other three—the maturity of the individual, the individual's record and history, and the prospects for protection of the public and rehabilitation of the individual—elicited speculative and conflicting testimony. There was no abuse of discretion.

## IV.

Defendant's final argument is that the absence of specific standards in § 635(b) governing the appropriateness of a transfer from criminal to juvenile court is a denial of due process. Analogizing the instant transfer proceeding to a termination-of-parental-rights proceeding, defendant contends that the State should be required to prove by clear and convincing evidence that a person seeking a transfer to juvenile court belongs in criminal court. The analogy is not well-taken. In a § 635(b) transfer proceeding involving fourteen-to-sixteen-year-olds, unlike a termination-of-parental-rights proceeding, the juvenile has been charged with a crime against the public that the Legislature deems to be so serious that it requires the proceeding to be initiated in criminal rather than juvenile court.

As the trial court recognized, a juvenile transfer decision concerns "'vitally important statutory rights of the juvenile.'" See *State v. Lafayette*, 148 Vt. 288, 291, 532 A.2d 560, 562 (1987) (quoting *Kent*, 383 U.S. at 556). Nevertheless, there is no constitutional right to be tried as a juvenile. See *Calhoun v. State*, 397 So. 2d at 1153; *A.M.H. v. State*, 766 P.2d 351, 355 (Okla. Crim. App. 1988); cf. *Menapace v. State*, 768 P.2d 8, 11 (Wyo. 1989) (scope of juvenile transfer proceedings that determine court of jurisdiction constitutionally rests with legislature). Indeed, some courts have held that a hearing is not

always necessary to determine whether a proceeding should be moved to juvenile court. See, e.g., *Vega v. Bell*, 47 N.Y.2d 543, 553, 393 N.E.2d 450, 456, 419 N.Y.S.2d 454, 460–61 (1979). This Court, in contrast, requires a hearing and findings of fact in such cases. *Powers*, 136 Vt. at 169, 385 A.2d at 1068. On the other hand, we have stated on several occasions that the transfer decision lies within the sound discretion of the trial court, see, e.g., *id.*, and that we will "review the exercise of discretion by the trial courts on a case by case basis." *State v. Jacobs*, 144 Vt. at 74, 472 A.2d at 1250. This is so because of the absence of specific statutory standards in the context of a transfer to juvenile court and our reluctance to hamper the court's discretionary powers by foreclosing consideration of factors not specifically enumerated in *Kent* or elsewhere. *Id.* at 75, 472 A.2d at 1250. For these reasons, we decline defendant's request that we adopt as mandatory the ABA Juvenile Justice Standards.

■ We reject defendant's contentions that the court had unbridled discretion and, as a result, defendant was not on notice as to what standards the court would employ. The trial court's decision is subject to review under an abuse-of-discretion standard. See, e.g., *id.* at 76, 472 A.2d at 1250. Further, we have repeatedly stated that the trial court may consider the *Kent* factors. See, e.g., *State v. Willis*, 145 Vt. at 468–69, 494 A.2d at 113. Defendant directed the court's attention to these factors in his motion to transfer, and the court considered them in reaching a decision. Defendant had a fair opportunity to present to the trial court any mitigating circumstances indicating that a transfer to juvenile court is appropriate. For its part, the court made a well-reasoned decision based on all the relevant circumstances and factors brought before it.

■ Finally, we reject defendant's argument that § 635(b) is unconstitutional because there is no rational basis for presuming that a fourteen-to-sixteen-year-old who commits certain offenses is an adult. There is a rational basis—the protection and interest of the public—for mandating that, absent mitigating circumstances, individuals who have committed certain serious crimes be prosecuted in criminal court.

*Affirmed.*

**Dooley, J.,** concurring. I concur in the Court's judgment but write separately because I believe that the trial court's discretion in denying the defendant's motion for transfer from criminal to juvenile court is not as open-ended as the majority states. I think the lower court's discretion must be guided by express standards, and I would adopt modified *"Kent"* factors for this purpose. See *Kent v. United States,* 383 U.S. 541, 566–67 (1966). If this Court is unwilling to adopt ascertainable standards, I agree with defendant that the ad hoc decision-making that prevails denies due process of law.

The trial court considered the *Kent* factors here and found that, overall, they weighed against defendant. I have no difficulty in holding with the majority that the court properly acted within its discretion in denying the motion for a transfer. My differences with the majority lie in its unwillingness to impose any bounds on the trial court's discretion. The Court states that the *Kent* factors are "permitted, but not mandated, by our prior decisions," leaving no objective basis for deciding whether to affirm or reverse when a lower court refrains from using the *Kent* standards. As Justice Frankfurter wisely observed: "Discretion without a criterion for its exercise is authorization of arbitrariness." *Brown v. Allen,* 344 U.S. 443, 496 (1953). I see no reason to authorize arbitrary decision-making when we can supply the criteria against which discretion should be exercised. See *Klein v. Klein,* 150 Vt. 466, 473, 555 A.2d 382, 386 (1988) ("While recognizing discretion [in awarding spousal maintenance], it is our responsibility to set appropriate standards and ensure consistent decision making, at least within limits.").

In *State v. Powers,* 136 Vt. 167, 169, 385 A.2d 1067, 1068 (1978), this Court noted that transfers to juvenile court under 33 V.S.A. § 635(b) were discretionary with the trial court, but we cautioned that "more is involved than judicial whim." Elaborating, we stated: "Adequate findings of fact are required, so that we may determine whether the sound discretion implicitly mandated by the statute was in fact exercised." *Id.* These propositions were cited approvingly in *State v. Jacobs,* 144 Vt. 70, 72, 472 A.2d 1247, 1248 (1984), although, at the same time, we expressly "decline[d] to adopt specific standards, electing instead to review the exercise of discretion by the trial courts

on a case by case basis." *Id.* at 74, 472 A.2d at 1250; accord *State v. Lafayette,* 152 Vt. 108, 110, 564 A.2d 1068, 1069 (1989); *State v. Smail,* 151 Vt. 340, 341, 560 A.2d 955, 955 (1989); *State v. Willis,* 145 Vt. 459, 465, 494 A.2d 108, 111 (1985).

It is incumbent upon us to articulate standards for distinguishing transfer decisions based on "judicial whim" from those based on "sound discretion." Without such standards, we—as well as the trial bench, the bar, and the public—are unable to say whether discretion is exercised soundly or whether findings are "adequate," as required by *Powers,* for soundness and adequacy are relative judgments that must be tested against standards. Unfortunately, the policy of *Powers* is, I believe, being undone by *Jacobs* and its progeny. Today's decision brings us further away from the principle of *Powers.*

The Court in *Jacobs* gave two reasons for declining to adopt standards:

> First, in enacting 33 V.S.A. § 635(b), the Legislature did not see fit to promulgate any standards, leaving the decision to the discretion of the trial court. This interpretation is, we think, clear, when § 635(b) is read in the light of § 635a (transfers *from* the juvenile courts). The latter statute contains elaborate and detailed standards, nine in all. See 33 V.S.A. §§.635a(c)(1), (2), and 635a(d)(1)-(7). In light of the fact that §§ 635 and 635a are not only adjoining statutes, but are in pari materia (both dealing with transfers), and in both cases were last acted on as part of the same enactment at the 1981 Special Session of the General Assembly, see 1981, No. 1 (Sp. Sess.), §§ 4, 5 (§ 635 amended; § 635a added), we think it is clear, that had the Legislature ever intended § 635 to require anything other than a sound discretionary judgment by the trial court, it would have said so by providing standards as it did in the case of its twin statute, § 635a. Under the circumstances it is impossible to attribute the difference to mere inadvertence. Nor is it a legitimate function of this Court to expand a statute by implication, that is, by reading into it something which is not there, unless it is *necessary* in order to make it effective. . . .
>
> Secondly, although the two "standards" recommended by defendant are certainly worthy of consideration by the juvenile court, they could, if adopted as mandatory, tend to

limit the scope of the court's discretionary powers, and nullify or retard consideration of other possible factors. Such a limitation may, in specific cases, work as a detriment to the interests of the juvenile in some instances, and to those of the public in others.

144 Vt. at 74–75, 472 A.2d at 1250 (emphasis in original).

Neither rationale is persuasive. A legislative intent in *support* of standards may also be inferred from the statutory scheme. The Court concluded from a comparison of §§ 635(b) and 635a that the absence of express standards in the former indicates that the Legislature intended standardless decision-making in § 635(b) cases. I think it is equally plausible to infer from the inclusion of specific factors in § 635a that the Legislature intended such factors to guide all rulings on transfer motions, and that its failure to reference the factors of § 635a(d) in § 635(b) was inadvertent. It is difficult to comprehend why the Legislature should require the juvenile court to evaluate specific factors in considering a motion to transfer a case to criminal court but not require the criminal court to evaluate the same or similar factors in ruling on a motion to transfer a case to juvenile court. The factors are equally relevant in both situations. I would construe the statutes to avoid such an irrational result. See *In re A. C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984).

I concur with the proposition in *Jacobs* that we should not "expand a statute . . . unless it is *necessary* in order to make it effective," but that condition is met here. Without reading standards into the statute, it is impossible to avoid arbitrary decision-making and to have meaningful review of transfer decisions. See Feld, *Reference of Juvenile Offenders for Adult Prosecution: The Legislative Alternative to Asking Unanswerable Questions*, 62 Minn. L. Rev. 515, 520 (1978) ("[B]ecause judicial waiver statutes typically give judges broad discretion in making transfer decisions, such statutes invite abuse of discretion and discriminatory application, thus undermining the fairness of the judicial process.").

The second rationale is also unpersuasive. I would not *limit* the trial court to consideration of the *Kent* factors; I would require only that the court consider those factors along with others the court deemed appropriate in the case before it.

But even if, as a matter of statutory construction, *Jacobs* correctly inferred the legislative intent behind the absence of express standards in § 635(b), I believe that ascertainable standards are constitutionally required under *Kent v. United States*. In *Kent*, the Supreme Court reversed a sixteen-year-old's conviction in the district court of housebreaking and robbery because of inadequate procedures used by the juvenile court in waiving jurisdiction pursuant to the District of Columbia Juvenile Court Act. 383 U.S. at 543. Among other defects, the juvenile court made no findings and did not cite any reason for the waiver, *id.* at 546, although at the time a 1959 "policy memorandum" of the D.C. juvenile court was in force which "set forth the criteria to govern disposition of waiver requests." *Id.* at 546 n.4. The memorandum, printed in an appendix to the Supreme Court's opinion, noted that the governing statute did not itself specify standards. *Id.* at 566. Because of the importance to all parties of "knowledge of the Judge's criteria," however, the memorandum elaborated as follows:

> The determinative factors which will be considered by the Judge in deciding whether the Juvenile Court's jurisdiction over such offenses will be waived are the following:
>
> 1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.
>
> 2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.
>
> 3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.
>
> 4. The prosecutive merit of the complaint, i. e., whether there is evidence upon which a Grand Jury may be expected to return an indictment . . . .
>
> 5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults . . . .
>
> 6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.
>
> 7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division,

other law enforcement agencies, juvenile courts [in] other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

*Id.* at 566–67. The memorandum continued:

Although not all such factors will be involved in an individual case, the Judge will consider the relevant factors in a specific case before reaching a conclusion to waive juvenile jurisdiction and transfer the case . . . for trial under the adult procedures. . . .

*Id.* at 567–68.

The Supreme Court did not say these particular criteria are constitutionally required; its holding was more general—that the petitioner was entitled to "procedural regularity," a hearing, counsel, access to records, and a statement of reasons for the decision. *Id.* at 553–54, 557, 561. Due process requires ceremony: "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony— without hearing, without effective assistance of counsel, without a statement of reasons." *Id.* at 554; see Feld, *supra*, at 524 (constitutional basis for *Kent*'s requirement of due process in waiver decisions); Schornhorst, *The Waiver of Juvenile Court Jurisdiction: Kent Revisited*, 43 Ind. L.J. 583, 585–88 (1968) (same). The Court emphasized the conditions for "meaningful review":

Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not "assume" that there are adequate reasons, nor may it merely assume that "full investigation" has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor.

383 U.S. at 561.

*Kent* concerned a transfer to criminal court where original jurisdiction lay with the juvenile court. The present case, of course, is the reverse: by statute, original jurisdiction over defendant is vested in the district court, which *may* transfer the proceeding to the juvenile court. 33 V.S.A. §§ 632(a)(1)(B), 635(b). But the underlying due process issues are the same. See *King v. State*, 36 Md. App. 124, 127, 373 A.2d 292, 295 (1977) ("The legal principles which govern the decision required to be made by the trial court in a 'reverse waiver' case are the same as those which determine the trial court's action on a request for waiver from the juvenile court to the circuit court level."). In both events, the transfer decision is what the Supreme Court in *Kent* labeled a "critically important" action, 383 U.S. at 556, that must be accompanied by procedural due process. See *J. M. R. v. Moore*, 610 P.2d 811, 814 (Okla. Crim. App. 1980) (both certification to criminal court and "reverse certification" involve substantive rights of juvenile).

Other states with statutes vesting jurisdiction over certain juveniles in criminal court, but permitting discretionary transfer to juvenile court, require that a ruling on a transfer motion address certain criteria. Thus, a Pennsylvania court has held:

> Under the Judicial Code, 42 Pa.C.S. § 6322(a), the court has the discretion to transfer appropriate cases to juvenile court. It is, however, the burden of the petitioner . . . to prove that he does not belong in criminal court. This is accomplished by demonstrating a need for and an amenability to programs for rehabilitation, supervision, and care provided by the juvenile court system.

*Commonwealth v. Waters*, 334 Pa. Super. 513, 519, 483 A.2d 855, 858 (1984) (citations omitted), *cert. denied*, 471 U.S. 1137 (1985); accord *Commonwealth v. Sourbeer*, 492 Pa. 17, 25, 422 A.2d 116, 119 (1980). This requirement must be met even though the statute itself does not specify criteria.

> Contrary to 42 Pa.C.S.A. § 6355, Transfer to criminal proceedings, which details at great length and precision the requirements which must be met by the Commonwealth in proving a need for transfer from the juvenile court to the criminal court, the legislature was silent as to the test for transfer from criminal court to the juvenile court.

*Commonwealth v. Zoller*, 345 Pa. Super. 350, 355, 498 A.2d 436, 439 (1985).

The Maryland statute providing for discretionary transfers from criminal to juvenile court in limited cases also fails to specify factors, but the state's appellate court has mandated that trial courts "consider the following factors: age of the child; mental and physical condition of the child; child's amenability to treatment in any institution, facility or program available to delinquents; nature of the offense and the child's alleged participation in it; and the public safety." *King v. State*, 36 Md. App. at 128, 373 A.2d at 295.

Numerous other states have enacted statutes spelling out criteria that must be addressed by a criminal court contemplating transfer of a proceeding to a juvenile court. The New York statute sets forth criteria largely tracking the *Kent* factors for certain offenses. N.Y. Crim. Proc. Law § 210.43(2) (McKinney 1982); see also *Evans v. State*, 287 Ark. 136, 141–42, 697 S.W.2d 879, 882–83 (1985); *State v. Anderson*, 385 A.2d 738, 739 n.2 (Del. Super. Ct. 1978); *State v. Alexander*, 215 Neb. 478, 486, 339 N.W.2d 297, 301 (1983); *K.C.W. v. State*, 736 P.2d 525, 526 (Okla. Crim. App. 1987).

Transfer decisions are among the most visible and controversial decisions made in the criminal justice system. The pressures on the trial court are enormous. At the same time, I can think of no decision where the actuality and appearance of fair adjudication is more critical. It is one of the last places where we should let arbitrariness creep into decision-making. It is also one of the last places where we should try to conduct "meaningful review" through 20/20 hindsight. We can accomplish these objectives only if we adopt standards to guide the trial court's adjudication of transfer motions. In hearings under 33 V.S.A. § 635(b), I would require consideration of the factors set forth in 33 V.S.A. § 635a(c) and (d) (transfer from juvenile to criminal court), which are, essentially, a modified version of the factors in the *Kent* appendix.